**C. Y., INCORPORATED, an Alaska Corporation, Appellant,**

v.

**Linda BROWN, Director of the State of Alaska Alcoholic Beverage Control Board, Appellee.**

No. 2781.

Supreme Court of Alaska.

Feb. 24, 1978.

C. R. Kennelly, Kennelly, Azar & Edwards, Anchorage, for appellant.

David T. LeBlond, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR and BURKE, Justices.

OPINION

BURKE, Justice.

This appeal comes to us after entry of summary judgment in an action for declar-

---

atory relief.[1] Appellant, C. Y. Incorporated, plaintiff in the court below, questions the authority of the Alaska Alcoholic Beverage Control Board to require payment of debts owed to the general creditors of a holder of a liquor license before granting its approval for a transfer of that license to appellant.

At the root of this controversy is AS 4.10.330. That section provides:

*Application for transfer of licenses.*

(a) No license may be transferred by the licensee to any other person except with the written consent of the board. Consent for the transfer of a license may be given upon written application therefor.

(b) Application for the transfer of ownership of an existing license shall be accompanied by a statement, under oath, executed by the transferor in which he lists all debts and the amounts which he owes to a creditor of the business and taxes due. The board shall promptly inform each creditor of the application and of the amount owed that creditor. *The board shall not approve the application for transfer unless all of the debts and taxes are paid, or the transferor gives security for the payment of them satisfactory to the creditor or taxing authority prior to approval of the application.* (emphasis added).

In reliance on the foregoing section, the Alcoholic Beverage Control Board, by and through its Executive Director, Linda Brown, refused to approve a transfer of a liquor license from Miles and Katherine Davic to C. Y. Incorporated until all taxes and debts owed to the Davics' creditors had been paid. C. Y. Incorporated thereupon commenced this action, seeking a judgment declaring that AS 04.10.330 does not apply to the form of transfer shown by the evidence.

The events giving rise to this litigation began when Miles and Katherine Davic con-tracted with C. Y. Incorporated for the installment purchase of the Golden Whale bar in Kotzebue, Alaska. Apparently, the Davics breached the contract and C. Y. Incorporated brought suit to recover possession of the business along with the liquor license. Pending resolution of that litigation, Superior Court Judge Victor D. Carlson, on May 22, 1974, ordered that possession and operation of the Golden Whale be returned to C. Y. Incorporated, allowing it to maintain the premises and continue the business in order to preserve the assets. C. Y. Incorporated then proceeded to pay the Davics $5,000.00 in exchange for a confession of judgment rescinding the contract. The agreement also provided that the Davics would sign all documents necessary for the transfer of the liquor license to C. Y. Incorporated. Judgment was entered on July 15, 1974, by Judge Carlson, requiring the Davics to convey the business back to C. Y. Incorporated, including the liquor license. The Davics were further ordered to sign all documents required to effectuate the transfer, in accordance with their confession of judgment.[2]

In March, 1975, C. Y. Incorporated moved to amend the judgment of July 15, 1975, so as to transfer the liquor license to C. Y. Incorporated by operation of law, on the grounds that the Davics had refused to sign the required transfer documents. On March 6, 1975, Judge Carlson ordered that the liquor license be transferred from the Davics to C. Y. Incorporated, but made such order and transfer "subject to the approval of the Alcoholic Beverage Control Board."

The filing of the present action followed the Board's later refusal to approve the transfer until the Davics' creditors were paid.

In the superior court, C. Y. Incorporated moved for summary judgment, contending, as it does here, that AS 04.10.330 was inapplicable because it had acquired the liquor license through foreclosure of a security

---

1. *See* AS 22.10.020(b).

2. AS 09.30.050, provides in part: "A judgment by confession may be entered with or without action against a person for any amount or relief."

interest, rather than through a voluntary transfer. The superior court denied C. Y. Incorporated's motion for summary judgment, saying in its written order:

It should first be noted that there are genuine issues that would have to be resolved before summary judgment in the plaintiff's favor would be possible. Among them are the issues set out in defendant's Statement of Genuine Issues dated June 4, 1975.

According to the statement referred to, those issues were:

(1) As a factual matter, was the transfer of the Golden Whale liquor license from Miles Davic and his former wife, Catherine Davic, to C. Y. Incorporated in the nature of a voluntary or involuntary transfer?

(2) As a factual matter what consideration was given and/or what financial obligations of the Davics did C. Y. Incorporated agree to discharge for the Confession of Judgment obtained from the Davics on or about May 23, 1974, which transferred the liquor license of the Golden Whale to C. Y. Incorporated?

(3) As a factual matter, did C. Y. Incorporated retain a security interest in the liquor license it earlier transferred to the Davics?

The superior court then proceeded to grant summary judgment in favor of the defendant, and against the moving party, as permitted by Rule 56(c), Alaska R.Civ.P.,[3] saying:

[T]he matter can be disposed of as a matter of law in favor of the defendant by assuming, for these purposes only, that the factual situation is as interpreted by the plaintiff. The transfer of the license lies within the provisions of AS 04.10.330 as read in conjunction with AS 09.35.087. *Gibson v. Alaska Alcoholic Beverage Control Board*, 377 F.Supp. 151 (D.C.Alaska 1974) is not closely analogous

to the instant case. This is not a UCC Article 9 transaction that might (without so deciding) remove the matter from the above cited statutes. Further, there is substantial difference in the identity of the parties and the issues. *Gibson* involved a dispute between a license holder and a secured party over whether or not the secured party, who had relied specifically upon the license for collateral could force a transfer of the license. The analysis of that case does not apply to a dispute between the Board and one seeking transfer of a license.

The foregoing is dispositive of all issues in this matter.

From the foregoing language, it is not altogether clear whether the superior court based its decision on the conclusion that C. Y. Incorporated had no security interest under the Uniform Commercial Code[4] or whether its decision was simply that any such interest that C. Y. Incorporated might have had was subordinate to the claims of general creditors under AS 04.10.330. In either event, we believe that the court correctly granted summary judgment in favor of appellee.

▉ Contrary to the thrust of its whole argument, C. Y. Incorporated apparently did not obtain the license through foreclosure of a security interest. What it did was pay the Davics $5,000 for a confession of judgment rescinding the installment sales contract and then took possession of the licensed premises under what, at that time, amounted to a voluntary transfer agreement, albeit one having the sanction of the superior court. The amended judgment, transferring the license by operation of law, was nothing more than an exercise of the court's power to declare done what the Davics had already agreed to do in their settlement agreement with C. Y. Incorporated. Thus, the transfer, despite having

---

**3.** Civil Rule 56(c) provides in part:

[Summary judgment shall be entered] if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any

party is entitled to judgment as a matter of law. . . . Summary judgment, when appropriate, may be rendered against the moving party.

**4.** AS 45.05.

certain overtones of a foreclosure, was in fact only a step removed from the ordinary transfer one would see in the event of a repurchase of a liquor license by a former owner. We hold that the requirements of AS 04.10.330 apply to such a transfer.

However, even if there was genuine foreclosure of a perfected [5] security interest, we would be compelled to reach the same result.

 AS 09.35.087 provides that "the liquor license of a judgment debtor [is] exempt from execution." That section, we believe, indicates an overall legislative intent that one general creditor of a liquor license holder should not be allowed to place himself in a preferred position over other general creditors. That policy is further illustrated by the language of AS 04.10.330, indicating that *all* general creditors of a liquor license holder should be paid before a transfer of the license will be approved. To allow one to avoid the requirements of AS 04.10.330 by the use of an Article 9 security interest, would be to defeat this basic policy, since one general creditor would, by that device, gain priority over others similarly situated. For example, a liquor supplier having sufficient bargaining power to obtain a security interest in a customer's liquor license, before extending credit to the license holder, could place himself in a preferred position over the claims of the license holder's other creditors. For that reason, we further hold that, even if there was a technical foreclosure in this case, the license transfer was subject to the requirements of AS 04.10.330.

The one instance in which the foregoing result seems harsh is the one presented in this case. It would seem that the seller of a liquor license should be afforded greater protection than that given to subsequent creditors of his transferee by AS 04.10.330. However, if the legislature intended to provide greater protection to sellers of liquor licenses it should have done so in terms sufficiently clear to make that intent known. The present statutory scheme fails to indicate that any such exception was intended. A healthy respect for the doctrine of separation of powers compels us to leave the development of such an exception to the legislative branch.

AFFIRMED.

MATTHEWS, J., not participating.

---

**5.** There is no evidence in the record that C. Y. Incorporated filed the financing statement re-

quired to perfect a security interest under the U.C.C. *See* AS 45.05.734.