718 F.2d 1446
 9 Collier Bankr.Cas.2d 422
 In re ANCHORAGE INTERNATIONAL INN, INC., et al., Bankrupts.
Mary Beth ARTUS, Trustee, Plaintiff-Appellee,
v.
ALASKA DEPARTMENT OF LABOR, EMPLOYMENT SECURITY DIVISION,
and Alaska Hotel & Restaurant Employees Health and
Welfare Trust and Pension Trust,
Defendants- Appellants.
 No. 82-3635.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 7, 1983.
Decided Sept. 15, 1983.
 
 William D. Artus, Artus & Choquette, P.C., Anchorage, Alaska, for plaintiff-appellee.
 Randall Simpson, Jermain, Dunnagan & Owens, Anchorage, Alaska, for defendants-appellants.
 Appeal from the United States District Court for the District of Alaska.
 Before ANDERSON and FLETCHER, Circuit Judges, and TAYLOR,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 This appeal is from the bankruptcy court's ruling (affirmed by the district court) that the provisions of an Alaska statute requiring payment of creditors of a liquor establishment before transfer of a liquor license are preempted by federal bankruptcy law. We have jurisdiction under 11 U.S.C. Sec. 47(a) (1976) (repealed 1978) and reverse.[1]I
 
 
 2
 On March 28, 1979, Anchorage International Inn, Inc. (Inn), the owner of an Alaska liquor license, was adjudicated a bankrupt. Prior to bankruptcy, the Inn had incurred two substantial debts arising out of the operation of a tavern connected to the Inn: (1) approximately $20,000 in taxes and employee withholding contributions due the State of Alaska, Department of Labor; and (2) approximately $143,000 in employee benefit contributions owed to the Alaska Hotel and Restaurant Employees Health & Welfare Trust and Pension Trust (Trust Funds).
 
 
 3
 During the bankruptcy proceedings, the trustee of the Inn arranged and secured the bankruptcy court's approval of the sale of the assets of the Inn, contingent upon approval of the transfer of the liquor license by the Alaska Alcoholic Beverage Control Board (ABC Board). Under Alaska law, the ABC Board has sole authority to issue and transfer liquor licenses; no license may be transferred without ABC Board approval. The Alaska statute requires that approval of a transfer be denied if
 
 
 4
 (4) The transferor has not paid all debts or taxes arising from the conduct of the business licensed under [the] title [governing alcoholic beverages] unless
 
 
 5
 (A) he gives security for the payment of the debts or taxes satisfactory to the creditors or taxing authority.
 
 
 6
 Alaska Stat. Sec. 04.11.360(4)(A) (1982) (emphasis added).
 
 
 7
 Relying on section 04.11.360(4)(A), the ABC Board initially denied the trustee's request for a license transfer because no arrangement had been made to pay the creditors of the liquor-related portion of the business. In order to facilitate sale of the assets of the Inn on the favorable terms arranged, the Trust Funds, the State, and the trustee entered into a stipulation under which the trustee promised to hold the proceeds from the sale of the license pending a judicial determination of their proper distribution. This stipulation constituted "security ... satisfactory to the creditors" as required under section 04.11.360(4)(A), permitting the ABC Board to approve transfer of the license to the purchaser. The proceeds are presently held by the trustee, to abide the result of this appeal.
 
 
 8
 On December 31, 1981, the bankruptcy court ordered that the $20,000 in state tax and contribution claims be paid first from the license sale proceeds, but denied any preferred right to payments from the sale proceeds to other liquor-related creditors of the debtor, including the Trust Funds. The court concluded that, because the license had been created by the State of Alaska, the Alaska statute did not conflict with federal law insofar as the statute required payment of state tax claims prior to transfer of the license.
 
 
 9
 As to the claims of the Trust Funds, however, the court ruled that the requirement of section 04.11.360(4) "that all general debts of the business be paid before a license may be transferred ... interfere[s] with the Bankruptcy Act's priority distribution scheme." The court concluded that under the Supremacy Clause, the Alaska statute "may not be enforced where the transferor has initiated bankruptcy proceedings." The court ruled that application of the statute "in bankruptcy situations would frustrate the Bankruptcy Act's purpose of providing an equitable distribution of the bankrupt's non-exempt property to all creditors of the same class" and "would also frustrate the purpose of Congress to establish unified federal priorities."
 
 
 10
 The district court affirmed the bankruptcy court's decision. The Trust Funds timely took this further appeal. The trustee has not cross-appealed from the decision in favor of the State of Alaska.
 
 II
 
 11
 Appellants challenge the judgment below asserting that the Alaska statute does not "establish priorities" in contravention of the general system of priorities pertaining to unsecured claims against the bankrupt estate. Rather, they argue, section 04.11.360(4) simply establishes in effect a lien on one asset of the bankrupt (the liquor license), in favor of those creditors whose claims arose out of the use of the license. This "lien," like any encumbrance, reduces the value of the asset and diminishes what is available for distribution in accordance with the general priority scheme of the federal bankruptcy law. But, liens are not void in bankruptcy simply because they favor secured creditors at the expense of general creditors.
 
 
 12
 The trustee, in defense of the judgment, argues that the state cannot substitute its distribution scheme for that established under the Bankruptcy Act. According to the trustee, permitting payment of the claims related to the liquor business prior to payment of other claims would unconstitutionally frustrate the "primary" objective of the Bankruptcy Act: to provide for an equitable distribution of assets among all creditors. See, e.g., Hassen v. Jonas, 373 F.2d 880, 881, 884 (9th Cir.1967). She decries the notion of permitting some creditors of the bankrupt (e.g., persons earning wages in the operation of the tavern) to be paid ahead of other creditors (e.g., bedding manufacturers). She relies on In re Leslie, 520 F.2d 761 (9th Cir.1975).
 
 
 13
 * As a preliminary matter, we must determine whether the Alaska statute gives the creditors of the licensed business a claim against the liquor license superior to that of other creditors of the bankrupt or whether it seeks simply to regulate license transfers without providing priority to the creditors of the liquor business. If the Alaska statute does not create a priority, the Trust Funds would have no superior right in bankruptcy to payment from the license sale proceeds. We would stop our analysis there.
 
 
 14
 The creditor of an owner of an Alaska liquor license, unlike the holder of a security interest or a mechanic's lien, cannot enforce the lien by self-help or by execution on the license. See C.Y., Inc. v. Brown, 574 P.2d 1274, 1277 (Alaska 1978). Nevertheless, the creditor's interest in the license is an encumbrance superior to the rights of others. The Alaska statute assures the liquor-related creditor that the sale of the license will not occur until his debt is paid or security satisfactory to him is provided. Other creditors whose debts are not related to the licensed business receive no similar assurances. Under Alaska law, the creditors of the liquor business do have a superior right to payment from the license sale proceeds.[2]
 
 
 15
 Although the lien interest created by Alaska Stat. Sec. 04.11.360(4) differs in form from other more typical creditor-protection devices such as a security interest or a materialman's lien, all serve the same function. Regardless of its label, each encourages the extension of credit by providing that, upon the occurrence of certain conditions, the creditor has a priority right to payment from a particular asset.
 
 B
 
 16
 Ordinarily, an asset subject to a lien such as the license in this case passes into the hands of the trustee on the date of filing subject to the lien. In this case, however, the bankruptcy court concluded that, since the Alaska statute "creates statutory priorities, not statutory liens or encumbrances on property," the license passed into the estate unencumbered except for the taxes due the State of Alaska. This was error.
 
 
 17
 For its rationale, the bankruptcy court relied heavily on In re Leslie, in which we stated in broad terms that "[c]onflicting priorities established by state law must yield upon the intervention of bankruptcy to superior federal law" and ruled that a California statute regulating the transfer of California liquor licenses "creates statutory priorities, not statutory liens." 520 F.2d 761, 762 (9th Cir.1975). We directed that the proceeds of the sale of a liquor business (the assets of which included a liquor license) be paid according to the distribution scheme for general unsecured claims established by the Bankruptcy Act and not according to the California statutory scheme for allocation of proceeds among creditors when a California liquor business is sold. Id. See also In re Professional Bar Co., 537 F.2d 339, 340 (9th Cir.1976).
 
 
 18
 Although Leslie and this case seem similar, there are significant differences. In Leslie, at the time the petition in bankruptcy was filed, the liquor license (as well as the related business assets of the debtor) had already been sold and the proceeds placed in an escrow account. See 520 F.2d at 762. Under California law, consent to the sale of the license by the liquor-related creditors is not required. Thus, what the trustee received in Leslie was the cash proceeds from a sale of a liquor business, not a license transferable only on the approval of creditors. Since, at the time of filing, creditors of the debtor were free to attach or levy against the proceeds, see id. at 763, the Leslie court correctly concluded that the trustee took unencumbered title to the proceeds, id. at 762; see 11 U.S.C. Sec. 110(a)(5).
 
 
 19
 The California statute differs from the Alaska statute in two other regards. The California statute attempted to determine priorities in the distribution of the proceeds of the sale not only of the liquor license but also of all other assets of the licensed business. See 520 F.2d at 762-63; Cal.Bus. & Prof.Code Sec. 24074 (West Supp.1975). The statute further specified the order of distribution among all claims against the debtor, regardless of whether the particular claim was related to the liquor business. See 520 F.2d at 762; Cal.Bus. & Prof.Code Sec. 24074.
 
 
 20
 By contrast, the Alaska statute establishes priority for one particular group of creditors in one specific asset. See Alaska Stat. Sec. 04.11.360(4). Moreover, the creditors of the license holder can prevent the sale of the license unless the license transferor provides security "satisfactory to the creditors." Id. In this case, the ABC Board initially refused to allow the license to be sold and finally did so only after the creditors had agreed that the proceeds of the license sale were "satisfactory" security.
 
 
 21
 Given the significant differences in scope and effect between the California and Alaska statutes, we do not find the holding in Leslie controlling.[3] See In re Professional Bar Co., 537 F.2d 339, 340 (9th Cir.1976) (creditor that state authorizes to prevent license transfer has valid preferred right in bankruptcy). Nothing in Leslie compels us to strike down the Alaska statute simply because it attempts to give certain creditors a preferred right in a particular asset.[4]
 
 
 22
 We recognize, of course, that Congress has the authority to make uniform laws governing the subject of bankruptcies, see U.S. Const. art. I, Sec. 8, cl. 4, and, pursuant to that authority, might invalidate in bankruptcy any or all pre-bankruptcy entitlements encumbering the debtor's assets. But Congress has not done so. The mechanic's lien and the security interest under the Uniform Commercial Code are but two examples of interests in particular property, created pursuant to state statutes, that are fully respected by the general bankruptcy law. The trustee's contention that states cannot allow some creditors to receive more of the proceeds of the sale of a bankrupt's assets than others receive is thus incorrect. No statutory bankruptcy policy forbids a state from giving one creditor a greater right to payment of his claim from a given asset than that conferred on another.[5]
 
 
 23
 Perez v. Campbell, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971), which holds that a state statute is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," does not contradict our conclusion. In Perez, an Arizona statute, which conditioned the issuance of a driver's license to a discharged debtor on the payment of pre-bankruptcy debts, was held to be preempted. Id. at 652, 91 S.Ct. at 1712. The Arizona statute directly conflicted with the discharge provisions of federal bankruptcy law. Id. at 648, 652, 91 S.Ct. at 1710, 1713.
 
 
 24
 Here, by contrast, the Alaska statute does not conflict with the federal distribution scheme because there is no general federal policy against state-created liens that favor one class of creditors over others. Section 04.11.360(4) does not, as the bankruptcy court concluded, frustrate the Act's "purpose of providing an equitable distribution of a bankrupt's non-exempt property to all creditors of the same class." Creditors who hold prior rights under the Alaska statute are simply not in the "same class" as other creditors.[6]
 
 C
 
 25
 Since federal bankruptcy law does override state-created priorities that apply only in the event of bankruptcy, we must examine the statute to determine whether it in fact has force and effect independent of the bankruptcy proceeding.[7] See 11 U.S.C. Sec. 107(c)(1)(A). We conclude that the creditors' rights created by the Alaska statute exist independent of the debtor's insolvency and accordingly should be recognized by the trustee.[8]
 
 
 26
 Regardless of when a license holder seeks to transfer an Alaska liquor license, all liquor-related claims must be paid first. See C.Y., Inc. v. Brown, 574 P.2d 1274, 1277 (Alaska 1978). The transfer caused by the trustee's need to liquidate the assets of the estate is no different from any other transfer in or outside of bankruptcy. Under Alaska law, the encumbrance has its full restrictive effect on the transfer of the underlying security (the liquor license) regardless of whether the transferor is or is not insolvent or undergoing a general distribution or liquidation of his property. The Alaska statute is not a bankruptcy distribution scheme in disguise.
 
 
 27
 Therefore, we hold that the Trust Funds have a prior right to the proceeds of the license sale to the extent of claims arising from the conduct of the licensed business.[9]
 
 III
 
 28
 We reverse the district court's ruling that the Bankruptcy Act preempts Alaska Stat. Sec. 04.11.360(4) conditioning the transfer of an Alaska liquor license on the payment of debts arising from the conduct of the licensed business. We conclude that the proceeds of the sale of the license are to be used first to pay debts related to the licensed business. We therefore remand for a determination of what portion of the $143,000 owed the Trust Funds arose from the "conduct of the business licensed."
 
 
 29
 REVERSED and REMANDED.
 
 
 
 *
 The Hon. Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 This case is governed by and all citations are to the Bankruptcy Act of 1898 (the "Bankruptcy Act"), ch. 541, 30 Stat. 544 (codified as amended at 11 U.S.C. Secs. 1-1103 (1976). Although the Act was repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, codified at 11 U.S.C. Secs. 101-1330 (Supp. V. 1981), the Act remains applicable to cases in which the original petition was filed prior to October 1, 1979, see Pub.L. No. 95-598, title IV, Sec. 402(a), 92 Stat. 2682 (1978)
 
 
 [2]
 The determination of the bankruptcy court that the proceeds of the sale of the liquor license must be used first to pay taxes and contributions owed to the State of Alaska before distribution to general creditors accords precisely with this conclusion. The State of Alaska had no ordinary statutory tax lien nor any judicial lien on the license, and in fact could not have obtained one. See Alaska Stat. Sec. 09.35.087 (1973). Implicit in the holding below therefore was a determination that it is section 04.11.360(4) that creates for certain creditors of the licensed business, i.e., the State of Alaska, a right to the proceeds of the sale of the license superior to that of other creditors
 
 
 [3]
 Certain suggestively broad language in Leslie might be misread to the effect that state law can never alter the order of distribution to creditors prescribed by the bankruptcy statutes. Such a proposition, not necessary to the decision presented by the peculiar California statute at issue in Leslie, does not comport with the general principles of federal bankruptcy law. State law often vests some creditors with special rights, sometimes called "liens" or "security interests," that enable certain creditors to collect ahead of general creditors in bankruptcy. The inherent purpose of any such lien or encumbrance is to give the holder of the lien a position superior to other creditors in a particular asset
 What is essential in determining whether a prior right to proceeds of an asset is valid in bankruptcy is not whether it has been labeled as a "lien" by the state statute, but whether it has any purpose or effect independent of bankruptcy. See 11 U.S.C. Sec. 107(c)(1)(A) (1976); Jackson, Bankruptcy and the Creditors' Bargain, 91 Yale L.J. 857, 905-06 (1982). As Professor Jackson states, when a state-created entitlement is enforceable inside and outside bankruptcy, "there is no reason stemming from the justifications underlying condemnation of state-created priorities ... to refuse recognition of the entitlement" in the bankruptcy situation. Id. The problem with the dictum in Leslie that would strike down all state-created entitlements is that it "misperceive[s] the nature of the inquiry," since "[a]ll state-created entitlements act in favor of some group of creditors, but bankruptcy law generally recognizes them nonetheless." Id. at 906 n. 228.
 The Ninth Circuit recognized as much a year after Leslie in In re Professional Bar Co., 537 F.2d 339 (9th Cir.1976). There, the court evaluated the contention of general creditors of an estate, one asset of which was a California liquor license, that a California statute requiring payment of California tax claims prior to license transfer was invalid since it overrode the priority federal bankruptcy law gave to wage claimants over tax claimants. 537 F.2d at 340. The court, upholding the priority of the tax claims, responded:
 This [notion of the supremacy of the federal distribution scheme] is true as a general principle. In this case, however, the problem is not so much one of priority of claims as one of defining the nature of the bankrupt's property to which the claims attach....
 California has placed a limitation on the value of a state liquor license by authorizing the Department of Alcoholic Beverage Control to refuse to transfer a state-created liquor license so long as certain state taxes remain delinquent. The bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer. It is to that limited value that any claims against the estate attach.
 Id. at 340 (citations deleted). By so holding, the court in Professional Bar failed to follow the broad principle for which Leslie could perhaps be read, that simply because a state-related entitlement is not denominated a lien and looks less like a lien than other creditor-protection devices, the entitlement is invalid in bankruptcy.
 
 
 [4]
 Neither of the two cases relied on by the Leslie court in support of the proposition that state-created priorities must yield to "superior federal law" actually hold anything of the sort. In the first, the court simply struck down a statutory lien on the basis of a then applicable bankruptcy act provision invalidating all non-possessory, unexecuted statutory liens, a provision that was completely revised in 1966 and is no longer in effect. See Elliott v. Bumb, 356 F.2d 749, 755 (9th Cir.1966); 11 U.S.C. Sec. 107(c)(a) (1964) (repealed 1966). In the second, the preferred interest was invalid in bankruptcy, because it came into effect only upon the debtor's insolvency. See In re Crosstown Motors, Inc., 272 F.2d 224, 226-27 (7th Cir.1959); 11 U.S.C. Sec. 107(c)(1)(A)
 
 
 [5]
 In re Petite Auberge Village, Inc., 650 F.2d 192 (9th Cir.1981), in which the court denied California's claim of a superior right to the proceeds of the sale of a liquor license for post-petition interest and tax penalties, does not compel a contrary result. The court explicitly denied the former claim on the ground that "interest on a debt stops when the bankruptcy petition is filed," id. at 194, and the latter on the basis of the bankruptcy law's strong policy against enforcing penalties unrelated to pecuniary loss since such claims penalize creditors not delinquent taxpayers, id. at 194, 196. See State Board of Equalization v. Stodd, 500 F.2d 1208, 1210 (9th Cir.1974). The court did state in passing that the liquor license was an "asset[ ] of the estate even before the sale of the license" and hence its proceeds, as "part of the bankrupt's estate ... could not be used to pay tax penalties and post-petition interest." 630 F.2d at 195. The court did not, however, gainsay the general rule of bankruptcy that where a pre-bankruptcy entitlement encumbers an asset, only the residual value of the asset passes into the estate. In fact, this was precisely the basis on which Petite Auberge acknowledged the prior right of the state to payment of its taxes. See id. at 194
 
 
 [6]
 Because we conclude that Alaska Stat. Sec. 04.11.360(4) does not conflict with federal bankruptcy law, we need not address the question whether a state statute regulating liquor and liquor traffic which does conflict with federal bankruptcy law would or would not be preempted by the Bankruptcy Act under the Supremacy Clause by virtue of the power preserved by the twenty-first amendment to the States to regulate "[t]he transportation or importation into any State ... for delivery or use ... of intoxicating liquors." See, e.g., Ziffrin Inc. v. Reeves, 308 U.S. 132, 138, 60 S.Ct. 163, 167, 84 L.Ed. 128 (1939); Washington Brewers Assoc. v. United States, 137 F.2d 964, 966 (9th Cir.), cert. denied, 320 U.S. 776, 64 S.Ct. 89, 88 L.Ed. 465 (1943)
 
 
 [7]
 Section 67c(1)(A) of the Bankruptcy Act, 11 U.S.C. Sec. 107(c)(1)(A) (1976), states:
 (c)(1) The following liens shall be invalid against the trustee:
 (A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor.
 The legislative history indicates that "distribution ... of his property" means a "general distribution" of all of the debtor's property and not the transfer of a "particular asset." See S.Rep. No. 1159, 89th Cong., 2d Sess. 2, 7, reprinted in 1966 U.S.Code Cong. & Admin.News 2456, 2457, 2461; 4 J. Moore & L. King, Collier on Bankruptcy p 67.20, at 229 (1978).
 
 
 [8]
 The prior right to payment from the proceeds of sale of the Alaska license constitutes a "statutory lien" within the ambit of Sec. 67c(1) of the Bankruptcy Act. 11 U.S.C. Sec. 1(29a) (1976) ("[s]tatutory lien shall mean a lien arising solely by force of statute upon specified circumstances or conditions")
 
 
 [9]
 Neither of two other provisions of the Bankruptcy Act governing statutory liens operates to invalidate the rights of the liquor-related claimants, considered as "statutory liens." Section 67c(1)(B) invalidates a lien only if it is "not enforceable" against a bona fide purchaser from the debtor on the date of bankruptcy. 11 U.S.C. Sec. 107(c)(1)(B) (1976). Since under Alaska law a person attempting to purchase the license cannot do so without the liquor-related creditors' consent, see Alaska Stat. Sec. 04.11.360(4), the "lien" is enforceable against any purchaser, bona fide or not. Section 67c(1)(C) applies only to rent liens. See 11 U.S.C. Sec. 107(c)(1)(C) (1976)