**In re CALIFORNIA WHOLESALE ELECTRIC COMPANY, a California corporation, Debtor.**

**Bankruptcy Nos. SB 84–01772–MG to SB 84–01778–MG.**

United States Bankruptcy Court, C.D. California.

Nov. 1, 1990.

Marla K. Markman, Deputy Atty. Gen., Los Angeles, Cal., for State of Cal.

Richard K. Diamond, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for debtor.

## MEMORANDUM OF DECISION

MITCHEL R. GOLDBERG, Bankruptcy Judge.

### FACTS

On May 7, 1984, Chalet Gourmet Sunset ("CGS"), Perinos Restaurant Inc. ("PRW"), Perinos Restaurant Downtown ("PRD") and California Wholesale Electric Co. ("CWE") filed separate petitions under Chapter 11 of the Bankruptcy Code. The cases were later consolidated for administrative efficiency. Relevant to this discussion are the sales of liquor licenses owned by CGS, PRW and PRD (collectively, "debtors").

On January 2, 1985, William J. Simon was appointed the Chapter 11 trustee. The trustee brought separate motions to approve the sales of the liquor licenses free and clear of all liens and encumbrances. The State Board of Equalization ("State") filed objections to the sales on the ground that there existed delinquent sales and use taxes owing from debtors and that, as a result, the State could disallow the sales. The State based its position on Cal.Bus. & Prof.Code § 24049[1]. It contended that § 24049 gave it a right to require payment of delinquent taxes as a pre-condition to

---

**1.** Section 24049 reads:

The department may refuse to transfer any license when the applicant is delinquent in the payment of any taxes due under the Alcoholic Beverage Tax Law [Rev & Tax C §§ 32001 et seq.], the Sales and Use Tax Law [Rev & Tax C §§ 6001 et seq.], the Personal Income Tax Law [Rev & Tax C §§ 17001 et seq.], or the Bank and Corporation Tax Law [Rev & Tax C §§ 23001 et seq.], or on unsecured property as defined in Section 134 of the Revenue And Taxation Code, when such tax liability arises in full or in part out of the exercise of the privilege of an alcoholic beverage license, or any amount due under the Unemployment Insurance Code when such liability arises out of the conduct of a business licensed by the Department of Alcoholic Beverage Control.

transferring the liquor licenses. Furthermore, the State added that not only delinquent pre-petition taxes had to be paid prior to transfer but also any penalties and post-petition interest on the pre-petition claims. The trustee contested the amounts claimed as penalties and post-petition interest.

As a result of the divergent interests between the State and the debtors regarding the penalties and post-petition interest, and an appeal pending before the Ninth Circuit which the parties thought would resolve the issue[2], the State agreed to allow the sales to proceed. It, however, required the proceeds from the license sales be placed in escrow and that the right of the State to condition the transfers on the payment of delinquent taxes be preserved in the proceeds of the sales as if the proceeds were the subject liquor licenses.

On March 22, 1985, the court entered its order approving the sale of PRD's liquor license for $39,000.00. On August 30, 1985, the court entered its order approving the sale of PRW's liquor license for $35,000.00. And, on April 23, 1986, the court entered its order approving the sale of CGS's liquor license for $17,000.00. The proceeds were to be held in escrow pending decision by the Ninth Circuit in *In re Farmers Market*.

On June 26, 1986, the Ninth Circuit issued it decision in *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986). It provided the parties with little guidance as to the issues relating to penalties and post-petition interest[3]. Consequently, the trustee, under protest, paid to the State the proceeds from the sale of each liquor license in the amounts of $17,000.00 from CGS, $24,000.00 from PRW and $39,000.00 from PRD. The State's claims are comprised of the following amounts of taxes, penalties and post-petition interest:

1. CGS, $5,546.93(tax), $2,667.58(interest) and $554.69(penalty) = $8,769.20

2. PRW, $4,315.44(tax), $1,860.63(interest) and $431.54(penalty) = $6,607.61

3. PRD, $46,541.00(tax), $15,657.76(interest) and $4,649.53(penalty) = $66,848.29

The State acknowledged that it was overpaid as to CGS and PRW and agreed that those two entities were entitled to a refund of $8,230.80 and $18,812.74 respectively. The debtors, however, believe the State was not entitled to penalties and post-petition interest and, therefore, the amounts refunded should be $11,453.07(CGS) and $21,104.91(PRW). The State has denied the debtors request for a refund of the monies paid toward penalties and post-petition interest.

Debtors base their contention on two grounds. First, debtors assert that *In re Petite Auberge*, 650 F.2d 192 (9th Cir.1981) is controlling. In *Petite Auberge*, the court held that as a condition of transfer of a liquor license, a state may recover delinquent taxes but not penalties and post-petition interest. Second, debtors contend that as the State is an unsecured creditor, it is not entitled to post-petition interest.

The State maintains that *Petite Auberge* is inapplicable as it was decided under § 57(j) of the old Bankruptcy Act which section no longer exists[4]. It argues that under *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986), decided under the present Bankruptcy Code, the State has the ability to require payment of penalties and post-petition interest as a condition of transfer.

The State, furthermore, contends that it is allowed to apply the proceeds from PRD's license to penalties and post-petition interest first, and to delinquent taxes sec-

---

**2.** *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986)

**3.** *Farmers Market* held that under Cal.Bus. & Prof.Code section 24049, the debtors' estate took the California liquor license from the debtors subject to the right of the State of California to payment of the delinquent taxes. 792 F.2d at 1400. It, however, did not clarify whether penalties or post-petition interest were to be included within the definition of delinquent taxes.

**4.** The Act was repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, codified at 11 U.S.C. sections 101–1330. The Act, however, remains applicable to cases in which the original petition was filed prior to October 1, 1979.

ond. It maintains that penalties and post-petition interest are entitled to priority under applicable case law and the Bankruptcy Code. The State's position will give it a priority claim of $27,726.06 against PRD [5]. However, if penalties and post-petition interest are not entitled to priority, the State's priority claim will be only $7,418.77 [6].

### ISSUES

1. Whether § 24049 entitles the State to penalties and post-petition interest on pre-petition tax claims.

2. Whether the State, on an undersecured claim, may apply the proceeds first to penalties and post-petition interest and then to delinquent taxes.

### RULING

I find that: (1) Section 24049 creates a statutory lien for the benefit of the State; (2) Section 24049 entitles the State to post-petition interest on pre-petition, oversecured tax claims but not to penalties on those claims and (3) the State, on an undersecured claim, may not distribute the proceeds to penalties and post-petition interest first and to delinquent taxes second.

### DISCUSSION

I agree with the State that *Petite Auberge* is not controlling in this matter. *Petite Auberge* was decided under a section of the old Bankruptcy Act which was repealed from the present Bankruptcy Code. The delimitative language of § 57(j) of the old Act does not appear in any form within the present Code [7]. And, as the old Act contained specific language to bar penalties and post-petition interest and the present Code does not, the Code in its present form does not per se prohibit the recovery of penalties and post-petition interest. The

question is whether § 24049 creates a statutory lien such that interest and penalties are secured claims.

### Post–Petition Interest on Pre–Petition Claims

The State's contention is that the Ninth Circuit decision in *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986), entitles it to delinquent taxes, penalties and post-petition interest.

In *Farmers Market*, the State appealed the District Court's affirmance of two Bankruptcy Court orders which barred the State from asserting § 24049 against several liquor license holders in bankruptcy. The licenses at issue had been sold and the proceeds were being held in escrow pending a determination of the appeal. The Ninth Circuit held that although it is federal bankruptcy law that controls the distribution of a debtor's estate, it is state law that determines the nature of the interest an estate takes in a state created property right. 792 F.2d at 1402. It declared, "[t]his circuit has consistently held that the institution of federal bankruptcy proceedings against a holder of a California liquor license does not invalidate § 24049's limitations." *Id.* The court, therefore, concluded that § 24049 is valid in bankruptcy proceedings under the Code and limits the interest which the estate takes in a liquor license. *Id.*

The Ninth Circuit, in holding for the State, relied on *In re Professional Bar Co.*, 537 F.2d 339 (9th Cir.1976). In *Professional Bar*, the trustee in bankruptcy brought an action against State agencies to recover money paid the State as a condition of transfer of four liquor licenses owned by the debtor. The Court held that as the State creates and controls its liquor licenses, under § 24049 the State is entitled to

---

**5.** $39,122.23 (proceeds) − $20,307.29 (penalty and interest) − $46,541.00 (tax) = $27,726.06.

**6.** $46,541.00 (tax) − $39,122.23 (proceeds) = $7,418.77.

**7.** Section 57(j) read:
  Debts owing to the United States or to any State or any subdivision thereof as a penalty or

forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty of forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.

any restrictions it places on the transfer of a license. 537 F.2d at 340. It explained,

> The bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses *encumbered* as they may be by terms of the statutes which create the licenses and provide the conditions of their transfer. It is to that limited value that any claims against the estate establish. *Id.* (emphasis added).

These cases make clear the import of § 24049. Section 24049, although not explicitly calling the State's interest a lien, automatically creates a security device which encumbers the value of a license. In other words, § 24049 creates the same type of a lien which arises by operation of law as does any other statutory lien. Bankruptcy Code, § 101(47) defines statutory liens. It reads in pertinent part: "statutory lien means lien arising solely by force of a statute on specified circumstances or conditions...." Clearly § 24049's lien fits within this definition as it arises (1) solely by force of § 24049 itself and (2) upon the non-payment of certain taxes.

This conclusion is reinforced by *In re Anchorage International Inn, Inc.*, 718 F.2d 1446 (9th Cir.1983). The Ninth Circuit found that an Alaska statute requiring approval of a transfer of a liquor license be denied if debts or taxes arising from the licensed business have not been paid, created a lien in favor of creditors [8]. In *Anchorage International*, the trustee arranged and secured the bankruptcy court's approval of the sale of the assets of the debtor, contingent upon approval of the transfer of the liquor license by the Alaska Alcoholic Beverage Control Board ("ABC Board").

Relying on the Alaska statute, the ABC Board initially denied the trustee's request for a license transfer because no arrangement had been made to pay the creditors of the liquor-related portion of the business. Thus, in order to facilitate the sale of the assets of the debtor, the creditors and the State entered into a stipulation under which the trustee promised to hold the proceeds from the sale of the license pending a final judicial determination. The bankruptcy court ordered that the $20,000 in state tax claims be paid first from the license proceeds, but denied any preferred right to payments from the sale proceeds to other liquor-related creditors of the debtor.

The Ninth Circuit reversed and held the Alaska statute created a security interest to the benefit of all liquor-related creditors. Id. at 1452. The Ninth Circuit relied heavily on the substance of the Alaska statute rather than its form. It stated,

> [a]lthough the lien interest created by Alaska stat. 04.11.360(4) differs in form from other more typical creditor-protection devices such as a security interest or a materialman's lien, all serve the same function. Regardless of its label, each encourages the extension of credit by providing that, upon the occurrence of certain conditions, the creditor has a priority right to payment from a particular asset. Id. at 1449.

The appellate court added, "this lien like any encumbrance reduces the value of the asset and diminishes what is available for distribution in accordance with the general priority scheme of federal bankruptcy law." Id. Furthermore, "liens are not void in bankruptcy simply because they favor secured creditors at the expense of general creditors." Id. See, e.g., *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986); *In re Professional Bar Co.*, 537 F.2d 339 (9th Cir.1976).

The appellate court distinguished *In re Leslie*, 520 F.2d 761 (9th Cir.1975), which involved a California statute regulating the transfer of liquor licenses. In *Leslie*, the debtor executed an agreement to sell his California on-sale liquor license and related business assets prior to filing bankruptcy. As required by Cal.Bus. & Prof.Code

---

**8.** The Alaska statute requires that approval of a transfer be denied if

(4) The transferor has not paid all debts or taxes arising from the conduct of the business licensed under [the] title [governing alcoholic beverages] unless (A) he gives security for the payment of the debts or taxes satisfactory to the creditors or taxing authority. Alaska Stat. section 04.11.360(4).

§ 24074, an escrow was opened in which the proceeds of the liquor related business assets, including the liquor license, were placed. Thereafter, the debtor filed his petition in bankruptcy. The District Court affirmed the Bankruptcy Court's ruling that certain proceeds from the sale of the bankrupt's liquor business be turned over to the trustee of the estate.

On appeal, the Ninth Circuit considered whether § 24074's distribution scheme was valid within bankruptcy proceedings [9]. The Court ruled that although the State may, as the creator of a liquor license, impose conditions on its transferability, the State may not, however, contravene federal bankruptcy law's priority scheme with regard to proceeds from other business assets as § 24074 did. Id. at 763. It concluded that title to the proceeds in question passed to the trustee unencumbered by § 24074. Id. at 762.

In distinguishing *Leslie*, the *Anchorage International* court held there were significant differences between the two cases and their respective statutes. Specifically, the court found three distinguishable characteristics: (1) In *Leslie*, at the time of filing the bankruptcy petition, the liquor licenses (and all other assets) had been sold, leaving for the estate, only the unencumbered proceeds. *Anchorage International*, 718 F.2d 1446, 1450 (9th Cir.1983). (2) The California statute, § 24074, attempted to determine priorities in the distribution of the proceeds of the sale not only of the liquor license, but also of all other assets of the licensed business. Id. And, (3) The California statute, § 24074, specified the order of distribution among all claims against the debtor, regardless of whether the particular claim was related to the liquor business. Id.

Because of these differences in scope and effect between the California and Alaska statutes, the Ninth Circuit found the holding in *Leslie* not controlling. It concluded that the creditors' rights created by the Alaska statute constituted a "statutory lien" within the ambit of § 67(c)(1) of the Bankruptcy Act [10].

The court, in fact, expressed in a footnote that the broad language of *Leslie* should not be "misread to the effect that state law can never alter the order of distribution to creditors prescribed by the bankruptcy statutes".... 718 F.2d at 1450 n. 3. It further added, "The Ninth Circuit recognized as much a year after *Leslie* in *In re Professional Bar*, 537 F.2d 339 (9th Cir.1976)." Id.

I, too, find *Leslie* inapplicable. At issue here is § 24049, not § 24074, which the *Leslie* court based its holding on and which the *Anchorage International* court used to distinguish the Alaska statute. Rather, § 24049 virtually parallels the Alaska statute in its scope and effect. None of the distinguishing characteristics are found here as they were in *Leslie*.

In the present matter, the State objected to the sale of the licenses until the delinquent taxes were paid; it only allowed the sales to go through on the condition that the State's right to its claim attached to the proceeds as if the proceeds were the subject liquor licenses. In *Leslie*, the licenses were sold prior to bankruptcy, without any conditions being placed on the sale. In *Anchorage International*, as in the present case, the State entered into an agreement to allow the licenses to be sold as long as the State's claim attached to the proceeds.

---

**9.** Section 24074 provides that transfer of a licensed liquor business must be approved by the Alcoholic Beverage Control Department and that before the filing of the transfer application, the transferee must deposit in an escrow the consideration for both the liquor license itself and other business assets. Upon the Alcoholic Beverage Control Department's approval, the license and other assets pass to the transferee and the escrow holder distributes the proceeds to the seller and his creditors following a specific

procedure. If the proceeds are insufficient to pay all creditors' claims, they are distributed in accordance with a priority scheme delineated in section 24074. *In re Leslie*, 520 F.2d 761, 762 (9th Cir.1975).

**10.** Section 67(c)(1) of the Bankruptcy Act was the predecessor to section 101(47) of the Bankruptcy Code which defines "statutory liens." See, 11 U.S.C. section 101(47).

Second, § 24049 only establishes priorities for one particular group of creditors, the State. Section 24074, on the other hand, attempts to establish priorities among all claims against the debtor, regardless of whether a particular claim was related to the liquor license. Alaska's statute is, therefore, very similar in its scope to § 24049 since it only establishes priorities for one particular group of creditors, those related to the liquor business.

Finally, § 24049 only establishes priority on one specific asset, the liquor license. Section 24074 attempts to establish priority on all the liquor business related assets, even those not created by the State. Again, the Alaska statute only creates priority for the state created liquor licenses. For the foregoing reasons, I find *Anchorage International* to be persuasive and hold that § 24049 creates a valid statutory lien which gives the State a superior proprietary right in the liquor licenses within the bankruptcy context.

A different result was reached by my colleague Judge Hargrove in *In re Del Mission Limited,* 116 B.R. 734 (Bankr.S.D. CA 1990). In *Del Mission* the trustee in a Chapter 7 case brought an action for the recovery of certain monies paid over to the State for penalties and post-petition interest. The State argued that § 24049 created a lien on the liquor license and, therefore, entitled the State to post-petition interest and penalties as it was oversecured. Judge Hargrove disagreed and summarily dismissed the State's argument that § 24049 created a security interest. Id. at 737. He concluded, that the State was not secured and, as such, *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) was not applicable. Id. I must, respectfully, decline to follow Judge Hargrove's reasoning as to the secured status of the State and, thus, logically to the applicability of *Ron Pair.*

■ *United States v. Ron Pair* recognized that 11 U.S.C. § 506(b) applied to non-consensual as well as consensual liens. The government claimed that it was due interest and penalties on its tax lien. The Supreme Court held that § 506(b) applies with just as much vigor to oversecured non-consensual liens as it does to oversecured consensual liens. 109 S.Ct. at 1029–1034. The court based its holding on the language of § 506(b) which makes no distinction between a non-consensual statutory lien and a consensual security interest[11]. Accordingly, the court concluded that all oversecured liens were entitled to post-petition interest. Id.

Therefore, as § 24049 creates a valid statutory lien, the State is entitled to post-petition interest on its pre-petition tax claims only to the point that it is oversecured on its claims. In the present matter, the State would be entitled to interest on its claims against CGS and PRW.

*Penalties as a Secured Claim*

■ Penalties, however, present a different matter. The Second Circuit in *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540 (2nd Cir.1989), provides guidance in answering the question of whether the State is entitled to penalties as part of its secured claim under these facts. It stated,

[R]on Pair also answers the question whether, under section 506(b), the county is entitled to priority on its penalty claims. Under the bankruptcy Code, "[r]ecovery of fees, costs, and charges" is allowed "only if they are reasonable and provided for in the agreement under which the claim arose." In the absence of such an agreement, fees and costs are not recoverable. *Ron Pair,* 109 S.Ct. at 1030.

The court went on to hold that the county was not entitled to penalties as part of its secured claim as "the claim for penalties arose, not under an agreement between the

11. Section 506(b) reads:
To the extent that an allowed secured claim is secured by property the value of which after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

parties, but by operation of law under the tax act." 880 F.2d at 1540.

Here, the State's claim for penalties also arose not under an agreement between the parties, but by operation of law under the tax act. Consequently, the State is not entitled to recover penalties as part of its secured claims. See, *United States v. Ron Pair,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

Since the priority provisions of § 506(b) are inapplicable, and because there is no showing in the record that these penalties represent compensation for actual pecuniary loss under § 507(a)(7)(G), section 502(a) governs the status of claims for penalties. Section 502(a) relating to general, unsecured claims requires the parties to look to the plan in determining whether the State is allowed to recover penalties on its claims as an unsecured creditor. The plan, under the present facts, is silent in this regard. Thus, the State will recover penalties with regard to CGS and PRW as there appears to be no other unsecured creditors within the class of general unsecured claims left to be paid.

### Distribution of the Proceeds on an Undersecured Claim

■ The State contends that regardless of whether there is sufficient money to cover its full entitlement to its tax claim, the State has the prerogative to apply the proceeds to penalties and post-petition interest first and to pre-petition taxes second on the theory that penalties and post-petition interest are entitled to priority status and, as such, any monies received may be lawfully applied to each first. For this proposition, the State cites *In re Mark Anthony Construction, Inc.,* 886 F.2d 1101 (9th Cir.1989).

The issue in *Mark Anthony Construction* involved the status of penalties and post-petition interest on post-petition claims, not pre-petition. The Ninth Circuit stated the issue in very straightforward terms: "is the interest which accrues on taxes due *after* the filing of a bankruptcy petition afforded first priority status as an administrative expense of the bankruptcy

estate." 886 F.2d at 1101 (emphasis added). The court answered the question in the affirmative. It held that just as penalties, under § 503(b)(1), relating to post-petition taxes are entitled to first priority so too should interest. Id. at 1108.

Since *Mark Anthony Construction* is inapplicable, and there are no other sections of the Bankruptcy Code which apply to the State's distribution scheme, I hold the State, on an undersecured claim, must apply the proceeds to the pre-petition taxes first as neither penalties nor post-petition interest on said pre-petition taxes are afforded priority.

### CONCLUSION

Based on the above analysis, I conclude:

1. As to the CGS claim, the State may retain the monies it recovered for taxes and post-petition interest on the pre-petition claims in the amount of $8,214.51 pursuant to 11 U.S.C. § 506(b). The State may also retain monies it recovered for penalties as a general unsecured claim pursuant to 11 U.S.C. § 502(a) in the amount of $554.69 provided there are no other general unsecured creditors to be paid. If there are other general unsecured creditors to be paid, the State shall return the $554.69 to the estate, and the estate shall distribute said monies to all general unsecured creditors on a pro-rata basis.

Any overpayment remaining with the State, as set forth in the facts to this memorandum, must be returned to the estate including accumulated interest. I will retain jurisdiction on the issue of interest.

2. As to the PRW claim, the State may retain the monies it recovered for taxes and post-petition interest on the pre-petition claims in the amount of $6,176.07 pursuant to 11 U.S.C. § 506(b). The State may also retain the monies it recovered for penalties as a general unsecured claim pursuant to § 502(a) in the amount of $431.54 provided there are no other general unsecured creditors to be paid. If there are other general unsecured creditors to be paid, the State shall return the $431.54 to the estate, and the estate shall distribute said monies to all

general unsecured creditors on a pro-rata basis.

Any overpayment remaining with the State, as set forth in the facts to this memorandum, must be returned to the estate including accumulated interest. I will retain jurisdiction on the issue of interest as set forth above.

3. The State on its undersecured claim against PRD must apply the proceeds of the liquor license to the tax claim first as penalties and post-petition interest on pre-petition claims are not entitled to priority. The State's priority claim against PRD is, therefore, $7,418.77.

Counsel for the State shall prepare, serve and lodge a judgment consistent with the foregoing Memorandum of Decision, which contains my findings of fact and conclusions of law.