Argued and submitted July 18, affirmed August 18, 1980

SMITH,
*Respondent,*
*v.*
DEAN VINCENT, INC.,
*Appellant.*

4M CORP.,
*Respondent,*
*v.*
DEAN VINCENT, INC.,
*Appellant.*
(Cases consolidated)

(Nos. A7707-09453, CA 15522,
A7912-06059, CA 17875)

615 P2d 1097

Glenn H. Prohaska, Portland, argued the cause for appellant. With him on the briefs were Mark E. Pengilly, and Day, Prohaska & Case, P. C., Portland.

Theodore S. Bloom, Portland, argued the cause for respondent. On the brief were David S. Paull, and Bloom, Ruben, Marandas & Sly, and Gabriel E. Berg, Portland.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals from the judgment of the trial court in each of these cases consolidated for appeal, by which each of the plaintiffs recovered damages incurred because of the wrongful delivery of stock certificates by defendant in violation of its duty as an escrow agent or bailee. We affirm.

The dispute arises from the 1965 sale of an apartment complex, known as Oswego Terrace, by plaintiffs, as seller, to Western Leasing, Inc., as buyer. The transaction was consummated by the sale of all of the capital stock of Oswego Terrace, Inc., which owned the apartments as its only asset.[1]

The stock was deposited with a pledge holder, pursuant to a Pledge Agreement, as security for the payment of the sales price. After the initial down payment, payments were to be made through defendant, who deducted a portion of each payment until its broker's commission was paid. The stock was originally deposited with William E. Dougherty as pledge holder. As part of a 1967 amendment to the original sales agreement, buyer and seller agreed that defendant be substituted for Dougherty to hold the stock as collateral under the terms and conditions of the original Pledge Agreement. Possession of the stock was transferred to defendant.

For an unexplained reason the stock was delivered on August 19, 1974, to the law firm of Lovett, Stiner and Fasano, which had represented the buyer during the negotiations for the purchase of Oswego Terrace, Inc., and was buyer's attorney when the certificates were delivered. At the time of that delivery buyer still owed each of the plaintiffs the stipulated amount of $105,014.

---

[1] Plaintiff Smith owned one-half of the Oswego Terrace, Inc. stock and Mills owned the other half. Smith commenced an action on his own behalf. Mills is now deceased and his successor in interest commenced the other action. All references to the seller of Oswego Terrace, Inc., refer to both plaintiffs.

[889]

Plaintiffs, through their attorney, notified buyer on November 19, 1974, that it was in default under the sales agreement because of its failure to make the payments due for the months of August, September, October and November of 1974. Under the terms of the sales agreement the buyer had 30 days from the date of notification by the seller to cure the default. On December 12, 1974, before the 30 days had expired, an involuntary petition in bankruptcy was filed against the buyer.

Both of the plaintiffs and the trustee in bankruptcy demanded the stock from buyer's attorneys, who filed an interpleader action to determine who had the right to possession of the stock certificates. That proceeding was abandoned when the receiver in bankruptcy filed an action in the United States District Court to obtain possession of the stock. Plaintiffs then filed a secured claim in the bankruptcy court for the unpaid balance owing under the sales agreement. The trustee in bankruptcy and other creditors of the buyer questioned whether plaintiffs were a secured or unsecured creditor, and plaintiffs eventually entered into a compromise settlement with the trustee in bankruptcy which was approved by the bankruptcy court.

Thereafter, plaintiffs filed these actions against defendant for breach of fiduciary duty seeking recovery from defendant for the difference between the amount recovered through the bankruptcy court and the amount plaintiffs contend was owing under the sales agreement. The parties have stipulated to that amount. Plaintiffs' contention is that defendant's delivering possession of the stock to the buyer's attorneys caused plaintiffs to lose their perfected security interest, or, at the least, raised serious question as to the perfected status of that security interest, which might have given the intervening claim of the bankruptcy trustee priority, requiring a settlement with the trustee for an amount less than was owed by the debtor.

The trial court found in favor of plaintiffs, holding that defendant was either a bailee or an escrow agent and had breached the duty it owed to plaintiffs by delivering the stock certificates to buyer's attorneys.

Defendant raises two issues on appeal. First, it contends that, as a matter of law, there is no causal connection between its act of delivering the stocks to the buyer's attorneys and the loss suffered by plaintiffs. Secondly, it argues that even if its delivery of the stocks caused plaintiffs' loss, the right to seek recovery was waived by the compromise settlement entered into with the trustee in bankruptcy.

I

The argument on lack of causation is three-pronged. Defendant contends first that plaintiffs never had a perfected security interest in the stock which was collateral for the sale of the property and, therefore, defendant's action in delivering the stock to buyer's attorneys had no effect on plaintiffs' position relative to the trustee in bankruptcy.

■ If a security interest is perfected more than four months prior to the initiation of bankruptcy proceedings the secured party prevails over the trustee in bankruptcy in any claim to the collateral covered by the security agreement. *Fliegel v. Associates Capital,* 272 Or 434, 537 P2d 1144 (1975). If the secured party's interest is not perfected, however, the trustee in bankruptcy, who has the status of a lien creditor, prevails. *See* ORS 79.3010(1)(b) and (3); *Fliegel v. Associates Capital, supra.*

■■ Defendant relies on ORS 79.2030(2) and the language of the Pledge Agreement. ORS 79.2030(1) provides that a security interest is not enforceable against the debtor or a third party, and does not attach, unless:

"(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor

[891]

has signed a security agremeent which contains a description of the collateral and in addition, * * *

"(b)  Value has been given; and

"(c)  The debtor has rights in the collateral."

Subsection (2) of ORS 79.2030 provides that,

"[A] security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) of this section have taken place *unless explicit agreement postpones the time of attaching.*" (Emphasis added.)

The Pledge Agreement between buyer and plaintiffs provides in part:

"In the event of the non-payment when due of any payment required by the terms of said agreement, or in the event Oswego Terrace Inc. should become in default on any mortgage which is a lien on any real property owned by said corporation, and any such default or defaults are not satisfied within thirty (30) days after written notice thereof to Western Leasing, Inc. by either Hal Smith or Raymond Mills, William E. Dougherty shall deliver said shares of stock and the attached stock powers to Hal Smith and Raymond Mills, and after such delivery by William E. Dougherty, Hal Smith and Raymond Mills shall be the owners of all of said shares of stock of Oswego Terrace, Inc., free and clear of any claim of Western Leasing, Inc. or any of its directors or stockholders."

Defendant argues that the above-quoted language from the Pledge Agreement is an "explicit agreement" which "postpones the time of attaching." It contends that plaintiffs' security interest could not attach until 30 days after written notice of default was delivered to the buyer, and the intervening bankruptcy of the buyer before the expiration of the 30-day period prevented that security interest from attaching and becoming perfected. ORS 79.3030(1).[2]

---

[2] ORS 79.3030(1) provides:

"(1) A security interest is perfected *when it has attached* and when all the applicable steps required for perfection have been taken. Such steps are specified in ORS 79.3020, 79.3040, 79.3050 and 79.3060. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches." (Emphasis supplied.)

In order to have a perfected security interest in the stock certificates plaintiffs had to comply with the requirements of ORS 79.2030(1) and with ORS 79.3050.[3] It is not contended that those requirements were not met here, but only that the Pledge Agreement explicitly postponed the time of attachment of that security interest. We do not so interpret the Pledge Agreement.

The statute requires that there be an *explicit* agreement which postpones the time of attaching. Defendant relies on *In re Dolly Madison Industries, Inc.,* 351 F Supp 1038 (ED Pa 1972), *aff'd* 480 F2d 917 (1973), in which such an explicit agreement was found. That case, however, only serves to point out the type of explicit agreement which is not present here. The Third Circuit noted the distinction in *Appeal of Copeland,* 531 F2d 1195, 1202 (3d Cir 1976):

> "* * * The security agreement in *Dolly Madison,* unlike the agreement in the instant case, specifically provides that in the event of default, notice, and delivery of the stock to the creditor, 'the seller's rights and obligations in and to the shares represented by the certificates * * * shall be those of a secured party holding collateral under the provisions of Article IX of the Uniform Commercial Code * * *.' By necessary implication, the seller achieves the status of a secured party with a perfected security interest only after default and the fulfillment of the other preconditions specified in the purchase agreement.

[3] ORS 79.3050 provides:

"A security interest in letters of credit and advices of credit, goods, instruments, money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in ORS 79.1010 to 79.5070. The security interest may be otherwise perfected as provided in ORS 79.1010 to 79.5070 before or after the period of possession by the secured party."

"In contrast to the language of that agreement, paragraph 8 of the pledge agreement in the case *sub judice* neither explicitly nor implicitly postpones the attachment or perfection of the security interest. Rather, it is completely silent as to the time at which creditor achieves the status of a secured creditor with a perfected security interest. Absent an explicit agreement to postpone the time of attachment * * * we are reluctant to infer that the parties intended to alter the normal sequence of events by which a security interest attaches and becomes perfected under the [Uniform Commercial] Code."

We think it is clear that the transaction was structured as it was here with the intention that a security interest in the stock certificates attach immediately. The Pledge Agreement expressly states that the stock is deposited with pledge holder "as collateral security for the payment of the purchase price of said shares." Further, it provides that the buyer may dissolve the corporation which issued the shares, and distribute its assets *if* a mortgage on all of those assets is given to plaintiffs to secure payment. Clearly, a present security interest was intended, whether it was in the stock or the property represented thereby. The agreement of sale refers to the mortgage as a "substitute for such pledge."

The principal amount secured by the pledge was $400,000. If we were to conclude that the security interest attached only after default, we would have to infer that it was not intended to attach until after it might be too late to be of any use. Such an inference would be unjustified. The 30-day period during which buyer could cure a default after notice is nothing more than a grace period (whether it be under the pledge or substituted mortgage) and "merely establishes an orderly procedure for enforcement of the security interest upon default." *Appeal of Copeland,* 531 F2d at 1201. It merely postpones the right to foreclose the security interest.

[894]

We hold that plaintiffs had a perfected security interest in the stock certificates during the time the certificates were in the possession of the defendant.

In support of its second argument for lack of causation, defendant contends that if plaintiffs' security interest in the stock was perfected while the certificates were in the hands of defendant, that perfected interest continued after the stocks were delivered to the buyer's attorneys and, therefore, plaintiffs were not damaged by that delivery.

We need not decide here whether plaintiffs' security interest remained perfected after possession was transferred to the buyer's attorneys. We need decide only that defedant's act of transferring possession to one who was the buyer's agent[4] created sufficient doubt as to plaintiffs' security interest to justify their compromising their claim.

Defendant does not contend that the delivery of the collateral was other than wrongful. That wrongful conduct jeopardized plaintiffs' position *vis a vis* the trustee in bankruptcy, making settlement a reasonable, if not a necessary, course of action. Defendant's action clearly was a substantial factor in causing plaintiff's loss. *See Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979); *Sworden v. Gross,* 243 Or 83, 409 P2d 897 (1966).

The third prong of defendant's argument on causation is that, notwithstanding an adverse conclusion on the first two points, plaintiffs' loss was caused solely by the bankruptcy of the buyer. The argument is reminiscent of the duck hunter who claimed that his

---

[4] Official Comment 2 to section 9-305 of the Uniform Commercial Code (ORS 79.3050) explains:

"Possession may be by the secured party himself or by an agent on his behalf: it is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party * * *."

hitting the duck with shot was not what killed the duck; rather it was the bird's impact with the ground. The function of the pledge was to assure payment of the purchase price, and if defendant had not transferred possession of the pledged stock, plaintiffs would have been able to effect collection.

## II

As to the defense of compromise and settlement, the record indicates that although defendant was notified of the intended settlement between plaintiffs and the trustee in bankruptcy, it did not participate in that settlement. It is not a party to that settlement and is nowhere mentioned in the findings of the bankruptcy court approving it. In addition, plaintiffs notified defendant prior to approval of the settlement that they intended to look to defendant for damages for breach of fiduciary duty. Plaintiffs are not seeking double payment in this action, nor are they suing on the same cause of action upon which they settled with the trustee in bankruptcy.

■ There is substantial evidence from which the trial court could have determined that the settlement agreement with the trustee in bankruptcy was reasonable and was not intended to release defendant from liability for its breach of fiduciary duty.

In summary, we conclude that plaintiffs had a perfected security interest in the stock certificates to secure payment of the purchase price for the sale of Oswego Terrace, Inc., and that their security interest was seriously jeopardized by the wrongful delivery of those certificates to the buyer's attorneys. Defendant's creation of that uncertain position for plaintiffs was a substantial factor in causing plaintiffs' loss in the settlement reached with the trustee in bankruptcy and defendant may be held liable therefor.

Affirmed.