**In re FARMERS MARKETS, INC., dba Farmers Markets, a California corporation, Debtor.**

**In re CAPITOL CITY FARMERS MARKETS, INC., dba Farmers Markets, a California corporation, Debtor.**

**In re FARMERS COMPANY, dba Farmers Markets, and dba Farmers No. 21, a California corporation, Debtor.**

**In re SUPERMARKET MANAGEMENT, INC., a California corporation, Debtor.**

**In re WALCO ADVERTISING, INC., a California corporation, Debtor.**

**In re FARMERS MARKETS OF YOLO, INC., a California corporation, Debtor.**

**Bankruptcy Nos. 283–02622–D–11 to 283–02627–D–11.**

United States Bankruptcy Court, E.D. California.

Feb. 8, 1984.

John K. Van De Kamp, Atty. Gen., State of Cal., Edward P. Hollingshead, Derry L. Knight, Deputy Attys. Gen., Sacramento,

Cal., for Bd. of Eq., P.K. Taylor, and Tom Childress.

Cooper & Shaffer, Laurel Bennett Kirby, Mary E. Olden, Sacramento, Cal., for debtors and debtors in possession.

## MEMORANDUM OPINION AND DECISION

### FACTS

LOREN S. DAHL, Bankruptcy Judge.

The debtor in possession, Farmers Markets, Inc., filed its Chapter 11 petition on June 15, 1983. Concurrently, five other related entities, including Capitol City Farmers Markets, Inc., filed voluntary petitions for reorganization. On June 22, 1983 the court ordered joint administration of the six estates.

At the time the petitions were filed, Capitol City Farmers Markets, Inc. owned two liquor licenses which it desired to sell. On September 19, 1983 the court authorized the sale of the two licenses upon the terms and conditions set forth in the sales agreement attached to the debtor's application. The agreement provided that Shortstop would purchase the licenses for $23,000 each and that this amount would be paid directly to the debtor. An escrow account would be opened to handle the transaction. Subsequently, on October 26, 1983, the California State Board of Equalization (Board) ordered the Department of Alcoholic Beverage Control to withhold transfer of the liquor licenses until the debtor paid the Board $27,717 in pre-petition taxes. On December 8, 1983 the Board informed the debtor that its claim against the liquor license escrows had increased to $56,000. The Board also filed a priority claim for taxes in the amount of $218,212.

The debtor alleges that the Board had actual knowledge of the filing of the petition and that the Board's actions constitute a violation of 11 U.S.C. § 362(a)(1), the automatic stay. The debtor asserts that the Board should be held in contempt of court. Based upon the debtor's ex parte motion, the court issued an order to show cause on December 15, 1983. In the return to the order to show cause, the Board argues that the state can condition the transfer of a debtor's liquor license upon the payment of delinquent taxes. The Board asserts that imposing conditions on the transfer of the licenses does not violate the automatic stay because it is not a proceeding within the meaning of § 362(a)(1). The Board continues that even if a proceeding is involved, the § 362(b)(4) exception to the automatic stay applies.

At the hearing on the order to show cause the parties entered into a stipulation which provided that the sale of the licenses could proceed. All monies derived from the sale are to be held by the escrow holder in an interest bearing account until the court determines the proper distribution of the proceeds.

## DISCUSSION

■ Both the Board and the debtor agree that the liquor licenses are property of the estate. This agreement is supported by both the Bankruptcy Act of 1898 (Act) and the Bankruptcy Reform Act of 1978 (Code). *See In re Coed Shop, Inc.,* 435 F.Supp. 472, 473 (N.D.Fla.1977) *aff'd,* 567 F.2d 1367 (5th Cir.1978); *Matter of Professional Bar,* 537 F.2d 339, 340 (9th Cir.1976); *In re Gencarelli,* 14 B.R. 751, 752 (Bkrtcy.R.I.1981); *In re Matto's Inc.,* 9 B.R. 89, 91 (Bkrtcy.E.D.Mich. 1981).

The issue that confronts the court is whether the estate includes the entire value of the licenses or whether the state can condition their transferability by first requiring the payment of delinquent taxes.

11 U.S.C. § 541(a)(1) provides that the "estate is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." A major change from the Act to the Code involves the expanded definition of property of the estate. *See United States v. Whiting Pools, Inc.,* —— U.S. ——, —— ——, 103 S.Ct. 2309, 2312–15, 76 L.Ed.2d 515, 521–23 (1983); *In re Johns-Manville Corp.,* 33 B.R. 254, 266–68 (Bkrtcy.S.D.N.Y. 1983). Collier states,

[s]ection 541 reflects a new concept concerning property of the estate under the Code. This new concept is the substantial departure under the Code from the extensive reliance of the Bankruptcy Act on non-bankruptcy law, usually state law, to determine what property will come into the estate. 4 *Collier on Bankr.* ¶ 541.01 at 541–9–10 (15th Ed.1983).

■ Moreover, 11 U.S.C. § 541(c)(1)(A) [1] provides in part, "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision—(A) that restricts or conditions transfer of such interest by the debtor." A liquor license, therefore, becomes property of the estate notwithstanding any reasonable conditions placed on its transferability. *In re Matto's Inc.,* 9 B.R. at 92.

At issue in the present case is § 24049 of the Cal.Bus. & Prof.Code which states,

> The department may refuse to transfer any license when the applicant is delinquent in the payment of any taxes due under the Alcoholic Beverage Tax Law, the Sales and Use Tax Law, the Personal Income Tax Law, or the Bank and Corporation Tax Law, or on unsecured property . . . when such tax liability arises in full or in part out of the exercise of the privilege of an alcoholic beverage license, or any amount due under the Unemployment Insurance Code when such liability arises out of the conduct of a business licensed by the Department of Alcoholic Beverage Control.

The Board argues that based primarily upon two Ninth Circuit cases, *In re Anchorage International Inn, Inc.,* 718 F.2d 1446 (1983) and *Matter of Professional Bar,* 537 F.2d 339 (1976), the state properly can condition the transfer of a debtor's liquor licenses.

In *Anchorage International* the court held that an Alaska statute that required a liquor establishment to pay its creditors before the license could be transferred was not preempted by federal bankruptcy law. The bankruptcy court in that case recognized that since the license had been created by the state, the state could define the nature of the property right and could indicate when it had a superior right to the sales proceeds of the license. 718 F.2d at 1448–49. *See also In re Petite Auberge Village, Inc.,* 650 F.2d 192, 194 (9th Cir. 1981). In *Professional Bar* the court held that Cal.Bus. & Prof.Code § 24049 did not conflict with bankruptcy law. The per curiam decision was based upon a definition of the nature of the bankrupt's property. The court stated, "[t]he bankrupt estate, insofar as it includes liquor licenses, has only the limited value of the licenses encumbered as they may be by the terms of the statutes which create the licenses and provide the conditions of their transfer."

While the Board relies heavily on these cases, the court finds that they are not persuasive in the present case. *Anchorage International, Professional Bar,* and *Auberge Village* were Act cases. As noted above, the Code greatly expanded the definition of property of the estate and reduced the reliance upon state law. The estate is now comprised of *all* the debtor's interests and is not limited by the terms of a state statute even though the statute initially may have created the property. By enacting § 541(c)(1)(A), Congress specifically meant to invalidate any provision in any agreement or law that restricts or conditions the transferability of a debtor's interests. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

■ In the present case § 24049 conditions and thereby limits the transferability of the debtor's two liquor licenses. Non-de-

---

1. In interpreting the scope of § 541(c)(1)(A) in the Chapter 13 context, courts have held that the section invalidates provisions that restrict the transfer of the debtor's interest in property such as § 110 of the New York Retirement and Social Security Law. *Matter of Ross,* 18 B.R. 364, 367 (D.C.N.D.N.Y.1982) *aff'd, Regan v. Ross,* 691 F.2d 81 (2d Cir.1982). And, recently the Fifth Circuit in *Matter of Goff* 706 F.2d 574 (1983) held that a debtors' self-employed retirement trusts were property of the estate. The trusts were administered pursuant to an ERISA qualified pension plan and contained a non-assignability provision.

linquency in the payment of certain taxes is a prerequisite to the transfer of the licenses. Section 24049 conflicts with the definition of property of the estate and specifically with § 541(c)(1)(A).[2] As such, the court finds that the Board cannot condition the transfer of the licenses upon the debtor's payment of delinquent taxes.

The court next must determine if the Board violated the automatic stay.

11 U.S.C. § 362(a)(1) states,

a petition filed ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

The Board argues that since it is entitled to impose conditions its actions do not involve a proceeding subject to the automatic stay.

The automatic stay is a basic protection afforded a debtor by the Code. The scope of the stay is broad. It applies to virtually any formal or informal action against the debtor or property of the estate. 2 *Collier on Bankr.* ¶ 362.04 at 362–27. The court in *In re Pizza of Hawaii,* 12 B.R. 796 (Bkrtcy. D.Haw.1981), found that a proceeding was involved when the liquor commission required the debtor to submit a state tax clearance before it renewed the debtor's liquor license.

■ Here, the Board is requiring the debtor to pay delinquent, pre-petition taxes. The court finds that the Board's actions do fall within the broad scope of § 362(a)(1).

In any event, since the Board is attempting to collect a claim, its actions also are precluded by § 362(a)(6).[3]

■ The Board next asserts that its actions were excepted from the automatic stay by § 362(b)(4). That section states, "[t]he filing of a petition ... does not operate as a stay—(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." In order to fall within the § 362(b)(4) exception the primary purpose of the state law or proceeding must be the protection of the public safety, health or welfare. The exception will not apply if the purpose of the law is the protection of a pecuniary interest in property. *Missouri v. United States Bankr. Court,* 647 F.2d 768 (8th Cir.1981) *cert denied,* 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982); *In re Thomassen,* 15 B.R. 907 (Bkrtcy.App. 9th Cir.1981); *In re Sampson,* 17 B.R. 528 (Bkrtcy.D.Conn.1982); *In re Gencarelli,* 14 B.R. 751 (Bkrtcy.D.R.I.1981); *In re Pizza of Hawaii,* 12 B.R. 796 (Bkrtcy.D.Haw.1981).

■ Turning to the present proceeding, there is no evidence that Cal.Bus. & Prof. Code § 24049 was enacted to protect the health or welfare of the public. Instead, the purpose of the law is to ensure that delinquent taxes are paid by the transferor of a liquor license. Since this purpose is pecuniary, the court finds that the § 362(b)(4) exception does not apply.

■ Contempt is an appropriate remedy when the automatic stay has been wilfully violated, even if based upon the advice of counsel. 2 *Collier on Bankr.* ¶ 362.11 at 362–59. Here, the automatic stay provi-

---

**2.** In *Chicago Board of Trade v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1923) the Supreme Court stated,

[w]here the Bankruptcy Law deals with property rights which are regulated by state law, the federal courts in bankruptcy will follow the state courts; but when the language of Congress indicates a policy requiring a broader construction of the statute than the state decisions would give it, federal courts can not be concluded by them. 264 U.S. at 10, 44 S.Ct. at 234.

*See also Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233, 234 (1971). A state law is invalid if it frustrates the full effectiveness of federal law.

**3.** Section 362(a)(6) states,

[e]xcept as provided in subsection (b) of this section, a petition filed ... operates as a stay, applicable to all entities of—(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

sions were definite and specific and the Board had actual knowledge of the debtor's bankruptcy. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976) *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *In re Demp,* 23 B.R. 239 (Bkrtcy.E.D.Pa.1982). However, at the hearing on the order to show cause, the Board agreed with the debtor that the sale should proceed with the net sales proceeds to be held subject to further order of this court. It does not appear that the Debtor has been therefore damaged and accordingly sanctions will not be imposed.

### CONCLUSION

The court finds that the Board cannot condition the transfer of the two liquor licenses upon the debtor's payment of delinquent, pre-petition taxes. Therefore, the court orders that the proceeds from the sale of the licenses are to be released to the debtor.

This Memorandum Opinion and Decision shall constitute findings of fact and conclusions of law. Counsel for the debtor shall prepare and submit and order consistent with this opinion.