**In re Alan E. BAQUET, Debtor.**

**Bankruptcy No. 285–00566.**

United States Bankruptcy Court,
D. Montana.

May 29, 1986.

---

**2.** The judgment rate in both Federal and Indiana courts is below 12¾%; no evidence was presented as to market rates.

Jeanette Ellen Berry, Bozeman, Mont., for debtor.

Dale L. Keil, Conrad, Mont., for Gladys Baquet.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

On December 18, 1985, Alan E. Baquet, the Debtor, filed a Chapter 7 Petition in Bankruptcy. Thereafter the Debtor's mother, Gladys Baquet (Gladys) filed a motion for relief from the automatic stay provisions under Section 362 of the Code. An unsecured creditor, Maurice Klabunde, as a party in interest filed objections to the motion. Hearing on the motion for relief from stay was held on April 25, 1986.

The evidence shows that on October 12, 1984, Gladys loaned North American Livestock Management Company, a Montana corporation, the sum of $33,000.00, at 15% per annum interest. The Debtor, a principal of the borrower, personally guaranteed payment of the note, and in addition pledged 5,743 shares of stock of Baquet Farms, Inc., as security. Gladys contends she perfected a security interest in such stock by possession because all stock certif-

icates for shares of stock in Baquet Farms, Inc. are held in trust by the registered agent of the corporation who is corporation counsel. The record is clear Gladys never took physical possession of the stock certificates. Payments of principal and interest of $5,950.00 were made on the note, leaving $32,000.00 due in principal and $1,256.64 in interest, for a total debt of $33,256.64. Gladys has not sought payment from the other guarantor of the note, but rather seeks to enforce her alleged perfected security interest against the stock of Baquet Farms, Inc.

The record reveals that a transfer of stock in Baquet Farms, Inc., a closely held family farm corporation, is subject to the terms and conditions of a restrictive stock agreement executed by the corporation and all shareholders on December 28, 1982. The stock certificates issued to and owned by the Debtor in Baquet Farms, Inc. are each endorsed "Subject to Restrictive Agreement". The corporate minute book was introduced in evidence and includes, not only the shareholder agreements, but also each stock certificate issued to other family members. The By-laws of the corporation are silent on holding of shares by a third party, and provide that the person in whose name shares stand on the books of the corporation shall be deemed by the corporation to be the owner thereof for all purposes.

Under the terms of the stockholder agreement, the price of each share is stipulated to be the book value, which is adjusted annually by the Board of Directors and shareholders. According to the minutes of the corporation, the per share value has remained at $7.00 per share since December 29, 1983. Thus, Gladys admits the total value of the Debtor's stock ownership in the family corporation is $40,201.00. Klabunde on the other hand contends the corporation balance sheet shows a stockholders equity of $617,479.00, thereby making each share worth $12.00 per share since 50,000 shares are outstanding. In addition, the Debtor at one time represented to his ex-wife that the shares were worth $50.00 per share. Whatever value is settled upon, there is equity in the property for the benefit of the estate even assuming Gladys is a secured creditor as against the Trustee.

The stockholders agreement further provides that, except for transfers to family members who are lineal descendants of Gladys, a transferee who has received shares, whether voluntarily or involuntarily, must give the other shareholders the first option to purchase the shares at the value set by the annual shareholders meeting, and in the event the shareholders refuse to buy, then the corporation must purchase the stock. Thus, in order to preserve the closely-held family ownership, only Gladys or her lineal descendants may receive shares of the company, except, other persons not in such designated group may receive shares if all other shareholders consent in writing. Further, any shareholder desiring to borrow money, by use of such shares, may do so by borrowing from the corporation, who shall take the shares as security. Except for this condition to facilitate borrowing of funds, "no shareholders * * * shall encumber or dispose of all or any part of his shares in the corporation * * * without written consent of all other shareholders * * *." Any purported transfer or disposition of shares in violation of the stockholder agreement is void to the company and shareholders. There is no evidence in the record by Gladys that shows the Debtor sought to borrow the funds from the corporation or that either Gladys or the Debtor obtained the written permission of the other shareholders for the purported pledge of the stock.

■ Gladys contends the stockholders agreement, both as to transfer and value per share, is binding on the Trustee, under Montana corporation law, Section 35–1–617, MCA, citing *Vanston Bondholders Protection Comm. v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), and *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The thrust of these cases is that the bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its

interest subject to such conditions. *Matter of DePoy*, 29 B.R. 466, 469 (Bankr.N.D.Ind. 1983). Under Section 35–1–617(1), MCA, a written restriction on the transfer of shares may be enforced against the holder of the shares, or any successor or transferee of the holder, if the written restriction is noted on the shares. Gladys cites *Groves v. Prickett*, 420 F.2d 1119, 1122 (9th Cir.1970), which upheld under California law a restriction on stock transfer as against a trustee in bankruptcy under Chapter XI of the Bankruptcy Act. On the other hand Klabunde contends the stock restrictions are void under Section 541(c)(1)(A) of the Code, citing *In The Matter of Trilling and Montague*, 140 F.Supp. 260 (D.Pa.1956) for the proposition that such stock restrictions do not apply to transfers by operation of law, but only to voluntary transfers and further Gladys is estopped from enforcing the restrictions because she did not comply with the provisions in loaning the money to the Debtor.

We start this analysis with Section 541 of the Code. As stated in *In Re Daniel*, 771 F.2d 1352, 1360 (9th Cir.1985):

"Under Section 541 of the Bankruptcy Code, all property in which a debtor has a legal or equitable interest at the time of bankruptcy comes into the estate. 11 U.S.C. 541(a)(1) (1982). What constitutes a legal or equitable interest is broadly construed. * * * "

To the same effect is *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

Section 541(a) property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case". The legislative history indicates that the 1978 Code reflected a substantial change in the determination of property of the estate and abandoned the uncertain concept of what was transferable to the estate. *In Re Graham*, 726 F.2d 1268 (8th Cir.1984). In addition, the 1978 Code provides under 541(c)(1)(A):

"Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the es-

tate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or as custodian before such commencement, and that affects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property."

The legislative history states:

"Subsection (c) invalidates restrictions on the transfer of property of the debtor, in order that all the interests of the debtor in property will become property of the estate. The provisions invalidated are those that restrict or condition transfer of the debtor's interest, and those that are conditioned on the insolvency or financial condition of the debtor, on the commencement of a bankruptcy case, or on the appointment of a custodian of the debtor's property. Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law." H.R. Rep. No. 595, 95th Cong. 1st Sess. 369 (1977); U.S. Code & Admin. News, 1978, pp. 5787, 6325.

■ It is also well-settled, however, that whether an interest of the debtor is property of the estate is a federal question, but the nature and existence of the debtor's rights to property is determined by looking at state law. *Matter of DePoy*, supra at 469. In the case of *In Re Farmers Markets, Inc.*, 36 B.R. 829, 832 (Bankr.E.D.Cal. 1984), the court held:

" * * * the Code greatly expanded the definition of property of the estate and reduced the reliance upon state law. The estate is now comprised of *all* the debtor's interests and is not limited by the

terms of a state statute even though the statute initially may have created the property. By enacting Section 541(c)(1)(A), Congress specifically meant to invalidate any provision in any agreement or law that restricts or conditions transferability of a debtor's interests." (emphasis in original)

Yet, the broad language from *Farmers Markets, Inc.*, has been tempered by two later bankruptcy court decisions in the cases of *In Re Polycorp Associates*, 47 B.R. 671 (Bankr.N.C.Cal.1985) and *California Board of Equalization v. MGM Liquor Warehouse*, 52 B.R. 77 (Bankr.Minne. 1985). *Polycorp* held, after citing the legislative history of 541(c), supra, at 672:

> "The plain meaning of that language is that 541(c)(1)(A) is intended to eliminate barriers to the transfer of property *to* the estate and nothing more. To interpret the language of Section 541(c)(1)(A) as urged by the Trustee, one would have to presume that Congress intended to alter the valuation placed on the license by the State of California.
>
> If the rationale of the Ninth Circuit is correct that the State of California created a limited value in the license when it issued it, then that rationale is still correct unless we presume that Congress can tell California it has no such power or can abrogate California's power to evaluate.

> \*     \*     \*     \*     \*     \*

It has often been said by analysts of 11 U.S.C. Section 541 that its passage greatly expanded the concept of property entering a bankruptcy estate. That is true, but those words must be cautiously applied and not expanded into a concept of the creation of property where none existed under state law. While the Bankruptcy Code defines the interest which becomes property of the estate, the nature and extent of the debtor's *interest* in the property is still determined by nonbankruptcy laws. *Collier on Bankruptcy*, 15th Ed. (M.B.), Section 541.061.-" (emphasis in original)

For examples of what property becomes part of the estate see: *In Re North American Coin and Currency, Inc.*, 767 F.2d 1573, 1575 (1985); *In Re Entz*, 44 B.R. 483 (Bankr.Ariz.1984); *U.S. v. Whiting Pools, Inc.*, supra; *In Re Daniels*, supra.

■   There can be no issue in this case that the stock of the Debtor is property of the estate. Rather, the question presented by the creditor is whether the sale of that interest by the Trustee is subject to the value and transfer restriction of the stockholders agreement. Under the rationale of the *Polycorp* case, the nature and extent of the Trustee's rights in the property rise no higher than those of the Debtor, unless the restrictions are inconsistent with federal bankruptcy law.

> "While state law must be applied in a manner consistent with federal bankruptcy law, *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270 (8th Cir.1983), cert. denied 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), we do not suggest that it is irrelevant." *In Re North American Coin and Currency Ltd.*, supra, at 1575.

Even the case relied upon by Gladys, *Butner v. United States*, supra, held that property interest in the assets of a debtor's estate should be analyzed and determined according to state law unless some identifiable federal interest requires otherwise. It has been held in the case of *In Re Entz*, supra at 485.

> "The debtor in possession does have authority to sell estate property out of the ordinary course of business without shareholder approval. 11 U.S.C. 363(b)."

As noted in *California Board of Equalization v. MGM Liquor Warehouse*, supra, at 80:

> "The language of Section 541(c)(1)(A) does expand the concept of property entering a bankruptcy estate; however, the creation of property cannot be expanded where none existed under state law."

Thus, the sale of the stock by the Trustee is governed by Section 363 of the Code, and particularly Subsections (b) and (1) of that section. 2 *Collier on Bankruptcy,*

363.12, p. 363-40, under the heading "Right To Use, Sell, or Lease Unaffected By Law or Contract Provisions to the Contrary" states, after citing 541(c)(1)(A):

"Section 363(1) is a somewhat more limited version of the same language which would permit the trustee, subject to the provisions of Section 365, to use, sell, or lease property of the estate notwithstanding so-called bankruptcy or *ipso facto* clauses which would terminate or modify the debtor's interest in property of the estate."

Notably absent from 363(1) is the language of 541(c)(1)(A).

Reported decisions indicate a broad spectrum of sales by trustees in Chapter 7 cases or debtors in possession where restrictions on sale are imposed. *In Re Anthony's Restaurant,* 44 B.R. 542 (Bankr.E. D.Pa.1984), held a "due on sale" clause in a mortgage, if valid under applicable state law, is enforceable when the debtor in possession sells in Chapter 11. In *Polycorp Associates,* supra, California law making a liquor license non-transferable unless certain state taxes are paid was held binding on the Trustee. To the same effect is *In Re Anchorage Intern Inc.,* 718 F.2d 1446 (9th Cir.1983). *In Re Warnings A.G. Food Center,* 50 B.R. 748 (Bankr.D.C.Maine, 1985), held the trustee's sale of property on liquidation was subject to a Maine sales tax, although the court recognized that the Ninth Circuit case of *California State Board of Equalization v. Goggin,* 245 F.2d 44 (9th Cir.1957) (*Goggin II*) held:

"Now the conclusive purpose of the acts relating to bankruptcies is to liquidate the property of the debtor in order to accomplish equitable distribution of his assets to his creditors. Any act which hinders, delays or burdens the accomplishment of this vital purpose constitutes an unlawful interference with the process of the court of bankruptcy and is invalid."

The court in *Warnings A.G. Food Center* found the approach of *Goggin II* to be in "stark contrast" to that of *Swarts v. Ham-*

*mer,* 194 U.S. 441, 444, 24 S.Ct. 695, 696, 48 L.Ed. 1060 (1964).

It is clear that if an indentifiable federal interest is present and overriding, then recognition of a restriction to liquidate by agreement or state law must fall. In the present case, the creditor states that the imposition on sale of the $7.00 per share value set by the stockholders is far less than the net asset value per share as shown by the corporate books, namely $12.00 per share. This may be true if the property of the corporation were being liquidated. Such is not the case, however, for we are dealing here with the sale of a minority interest in a closely held corporation, which the accountant for the corporation stated would have little, if any, value. The holding of *In the Matter of Trilling and Montague,* 140 F.Supp. 260 (D.C.Pa. 1956), notwithstanding, I find the language of Section 363(1) to be more persuasive. Even the holding of *Goggin II* can be accomodated by enforcing the agreement to the extent that the Trustee offer the stock for sale to the shareholders and then to the corporation for $7.00 per share, and failing sale, then expose the shares to the open market.

This matter came before the court on an application of Gladys Baquet for relief from the stay. Even Gladys now admits there is equity in the stock for the benefit of general unsecured creditors. In addition, Gladys alleged:

"All stock certificates for shares of stock in Baquet Farms, Inc. are held in trust by the registered agent of the corporation, the undersigned attorney, Dale L. Keil, at the office of said registered agent, located at 315 South Main, Conrad, Montana 59245. Applicant's security interest in the debtor's stock was perfected by notice to said registered agent and resultant transfer of possession of the debtor's stock certificates from possession for the benefit of the debtor to possession for the benefit of the secured applicant herein. Said security interest being perfected under the requirements of the Montana Uniform Commercial

Code, Sections 30–8–313 and 30–8–321, MCA."

The only evidence introduced in support of the above allegations is the minute book of the corporation. Gladys failed to introduce any written document showing the Debtor gave the transfer agent of the corporation notice of the pledge. On October 20, 1984, a meeting of the directors was called and a resolution passed whereby the corporation would execute a guaranty for a loan from Bozeman Production Credit Association to North American Livestock Management Company, not to exceed $90,000.00. The minutes are silent on the October 12, 1984, loan from Gladys to the Debtor and the pledge of the stock. In addition, as noted above, by the express terms of the Stockholders Agreement of December 28, 1982, no shareholder "shall encumber" any of his shares "without the written consent of all other shareholders, or in the absence of such written consent, without first giving to all other share-holders and to the corporation at least sixty (60) days written notice by registered mail of his intention to make a disposition of his shares". The provisions of the agreement were not followed or adhered in this case. To paraphrase an old addage, he who lives by the sword of the agreement, may also perish by that sword.

> "A party cannot avail himself of the benefits of a contract on the one hand, but avoid the burdens of that same contract on the other hand." *Blumfield Agency v. Little Belt, Inc.*, — Mont. —, 663 P.2d 1164, 1166 (1983).

By virtue of the total disregard of Sections 30–8–321, MCA, in failing to give notice to the stock transfer agent of the corporation of the pledge of stock and Gladys' further disregard of the stockholders agreement, she cannot become or is not a secured creditor in the Debtor's stock as opposed to the Trustee. 11 U.S.C. 544. *Smith v. Dion Vincent, Inc.*, 47 Or.App. 887, 615 P.2d 1097, 1100 (1980) holds:

> "If the secured party's interest is not perfected, however, the trustee in bankruptcy, who has the status of a lien creditor, prevails."

See also *In Re Kontaratos*, 10 B.R. 956, (Bankr.Maine 1981), which discusses at length perfection of liens in stock certificates, and holds, in part, discussing 30–9–305 of the UCC (adopted by reference in 30–8–321):

> " 'Notification' to the 'bailee' of the secured party's interest under these circumstances means notification *by the pledgor* to the bailee, because relinquishment by the pledgor of control over the disposition of the collateral following performance is indispensable to the creation of a bailment conformable with the requirements of UCC Section 9–305 for the perfection of the secondary pledge."

There is no evidence in the record that the Debtor as pledgor ever notified the bailee transfer agent of his pledge of stock as security for the loan from his mother Gladys.

Further the case of *Appeal of Copeland*, 531 F.2d 1195, 1204 (3rd Cir.1976) appropriately holds:

> "Where the Code requires perfection by possession of the secured party or his bailee, it is clear that possession by the debtor or an individual closely associated with the debtor is not sufficient to alert prospective creditors of the possibility that the debtor's property is encumbered."

Mr. Keil held all of the stock of shareholders in the minute book. The Debtor's stock was not segregated from the other shares. Since there was absence of notice by the pledgor, the possession of the stock by the attorney who held all shares of stock in trust for all shareholders does not satisfy the rule enunciated in the *Copeland* case.

IT IS ORDERED the motion for relief from the automatic stay is denied.

IT IS FURTHER ORDERED the Trustee shall liquidate the above stock of the Debtor held in Baquet Farms, Inc. by sale in accordance with the shareholders agreement of December 28, 1982, at a price of $7.00 per share.